IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

GILBERT JOHNSON,

    Plaintiff,

v.                        CASE NO. 4:15cv543-RH/CAS

MORRIS YOUNG, in his official capacity as
SHERIFF OF GADSDEN COUNTY, FLORIDA,

    Defendant.

_____/

**ORDER DISMISSING OR GRANTING**
**SUMMARY JUDGMENT ON ALL CLAIMS**

This is an employment-discrimination case. The plaintiff, a supervisory law enforcement officer, sat idly for hours at his father's property during a night shift. This came to light because a school was burglarized during the shift. A deputy under the plaintiff's command had been assigned to conduct a check at the school but failed to do it. The plaintiff was demoted. He says he should not have been disciplined for his subordinate's failure to conduct the check and that the real reason for the demotion—and for the plaintiff's earlier assignment to the night shift—was race.

The defendant has moved for summary judgment. It is uncontested that the plaintiff spent hours at his father's property when he should have been working—an inexcusable dereliction of duty. The plaintiff has pointed to nobody who committed a similar offense without suffering at least this much discipline. This order dismisses a portion of the plaintiff's claims for failure to exhaust administrative remedies and grants summary judgment on the remainder.

I

The plaintiff Gilbert Johnson began working for the defendant Sheriff of Gadsden County, Florida, in 1998. He began as a patrol deputy but in 2005 was promoted to sergeant. In early 2013, Mr. Johnson was transferred to the night shift, still as a sergeant.

In the summer and early fall of 2013, Gadsden County suffered a spate of burglaries targeted primarily at stealing copper wire from air-conditioning units and electrical boxes. To address the issue, the night shift, under Mr. Johnson's command, was to perform periodic checks at facilities that could be burglarized, including St. John's Elementary School. Despite this plan, the school was burglarized. An investigation turned up these facts, which are undisputed: first, Mr. Johnson had assigned a deputy to check the school but the deputy forgot to do it; and second, Mr. Johnson spent several hours during that shift on the clock but at his father's property supervising nobody.

An extensive, multi-layered investigation resulted in a recommendation that Mr. Johnson be demoted. The Sheriff demoted Mr. Johnson. Mr. Johnson says in other circumstances supervisors have not been held responsible for improper conduct of subordinates. But the record includes no evidence that anyone at the Sheriff's Department, let alone any supervisor, ever engaged in conduct similar to Mr. Johnson's—essentially abandoning his post—without suffering discipline at least this severe.

II

Mr. Johnson filed this action against the Sheriff asserting that he was assigned to the night shift and later demoted because of race. He asserts claims under Title VII of the Civil Rights Act of 1964 as amended and under the Florida Civil Rights Act. The federal and state substantive standards are the same.

After discovery closed, the Sheriff moved for summary judgment, asserting both failure to exhaust administrative remedies and that Mr. Johnson's claims fail on the merits.

Failure to exhaust is properly raised by motion to dismiss. *See Bryant v. Rich*, 530 F.3d 1368, 1374 (11th Cir. 2008). But the motion's label makes no difference here. The exhaustion issue is ripe for a decision, as is the issue of summary judgment on the merits.

On a summary-judgment motion, disputes in the evidence must be resolved, and all reasonable inferences from the evidence must be drawn, in favor of the nonmoving party. The moving party must show that, when the facts are so viewed, the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A summary-judgment motion cannot be used to resolve in the moving party's favor a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a).

III

Before filing a lawsuit under Title VII or the Florida Civil Rights Act, an employee must exhaust administrative remedies. The first step is filing a charge with the Equal Employment Opportunity Commission or Florida Commission on Human Relations. The exhaustion requirement exists so that the EEOC or FCHR has "'the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts.'" *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004) (quoting *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 929 (11th Cir. 1983)). Unless an employer waives the exhaustion requirement, an employee cannot prevail on a claim that the employee did not properly exhaust.

Case 4:15-cv-00543-RH-CAS   Document 27   Filed 08/30/16   Page 5 of 12
Page 5 of 12

A

Under Title VII, the deadline for filing an administrative charge is 300 days after the challenged discriminatory act. *See* 42 U.S.C. § 2000e-5(e); *see also City of Hialeah, Fla. v. Rojas*, 311 F.3d 1096, 1101 (11th Cir. 2002). Under Florida law, the relevant period is 365 days. *See* Fla. Stat. § 760.11.

Mr. Johnson was demoted on November 13, 2013. He filed an administrative charge on November 5, 2014. This was more than 300, but fewer than 365, days after the demotion. The charge was timely for a demotion claim under state but not federal law.

Mr. Johnson says the federal period should be equitably tolled. Equitable tolling "is an extraordinary remedy which should be extended only sparingly." *Bost v. Fed. Express Corp.*, 372 F.3d 1233, 1242 (11th Cir. 2004) (quoting *Justice v. United States*, 6 F.3d 1474, 1479 (11th Cir. 1993)). Equitable tolling may be appropriate under Title VII if (1) an action is pending in state court; (2) the defendant concealed facts supporting a Title VII claim; or (3) the defendant misled the employee about the employee's rights under Title VII. *See, e.g., Manning v. Carlin*, 786 F.2d 1108, 1109 (11th Cir. 1986) (citing *Chappell v. Emco Machine Works Co.*, 601 F.2d 1295 (5th Cir. 1979)); *Mesidor v. Waste Mgmt., Inc. of Florida*, 606 F. App'x 934, 936 (11th Cir. 2015). None of these circumstances are present here.

Mr. Johnson also says the 300-day period began to run only when he learned a critical fact indicating his demotion was discriminatory. He says the fact was that another supervisor—Lt. Shelton Turner—engaged in similar misconduct but was not demoted. But as discussed below, Lt. Turner's conduct was not similar, and in any event the 300-day period does not reopen each time an employee learns a fact that, according to the employee, supports a claim of discrimination. If the law were otherwise, the 300-day limitation would lose much of its effectiveness. Mr. Johnson's 300-day period began running when he learned he would be demoted—by the effective date of the demotion at the latest.

The failure to file a timely administrative charge bars all of Mr. Johnson's federal claims.

B

Mr. Johnson's claim that he was discriminatorily transferred to the night shift is barred for another reason as well. And this reason also applies to the state claim as well as the federal claim.

An employee's claims in court are limited by the scope of the administrative investigation that can "reasonably be expected to grow out of the charge of discrimination." *Alexander v. Fulton Cty., Ga.*, 207 F. 3d 1303, 1332 (11th Cir. 2000), *overruled on other grounds by Manders v. Lee*, 338 F.3d 1304, 1328 n.52 (11th Cir. 2003) (citation omitted). Claims in court may "'amplify, clarify, or more

clearly focus' the allegations in the EEOC complaint," but "new acts of discrimination are inappropriate." *Gregory*, 355 F.3d at 1279-80 (quoting *Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989)).

Mr. Johnson's administrative charge referred to his demotion but made no mention at all of the transfer to the night shift. That transfer occurred months earlier for completely different reasons. An investigation of the transfer could not reasonably be expected to grow out of the charge that the demotion was discriminatory. Mr. Johnson did not properly exhaust the transfer claim under either federal or state law.

C

In sum, the only claim that Mr. Johnson properly exhausted is the state-law claim based on the demotion. The other claims must be dismissed for failure to exhaust.

IV

That brings us to the merits. The properly exhausted state demotion claim fails on the merits. And if the other claims had been exhausted, they too would fail on the merits.

When, as here, an employee relies on circumstantial evidence in support of a discrimination or retaliation claim, the employee may proceed under the familiar burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S.

792 (1973), and later cases. Under that framework, an employee first must present a prima facie case. The employer then must proffer a legitimate nondiscriminatory or nonretaliatory reason for its decision. The employee then must show that the proffered reason was not the real reason for the decision and that instead a reason was discrimination or retaliation. Alternatively, the employee may present other evidence from which a reasonable factfinder could infer prohibited discrimination or retaliation. *See, e.g., Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011).

The Eleventh Circuit recently held that *McDonnell Douglas* does not apply in mixed-motive cases. *See Quigg v. Thomas Cty. Sch. Dist.*, 814 F.3d 1227 (11th Cir. 2016). The import of this decision may be unclear. But either way, *Quigg* has no effect here, for two reasons. First, Mr. Johnson asserts that the Sheriff acted solely from an improper motive: race. This is not a mixed-motive case. Second, under *Quigg*, a plaintiff must show that discrimination was a motivating factor in the defendant's challenged decision; in the circumstances of this case, the answer will be the same to the analytically separate questions of whether race was a motivating factor in the Sheriff's demotion decision and whether the Sheriff's proffered reason for the demotion was pretextual.

Under *Quigg*, just as under *McDonnell Douglas*, this case turns on a careful analysis of the record. The dispositive question is whether, on this record, a

reasonable jury would be compelled to find that the Sheriff demoted Mr. Johnson because he effectively abandoned his post, not because of his race.

This issue, expressed more generally, is whether the employer's proffered legitimate reason for its action was the true reason or was instead a pretext for discrimination or retaliation. The Eleventh Circuit has said that on this issue, the employee must meet the employer's proffered reason head on; disagreeing with the wisdom of the decision will not do. The Eleventh Circuit has put it this way:

> A plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer. Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason.

*Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000).

Mr. Johnson has not met this standard. The issue is not close. Mr. Johnson was a supervisor who was supposed to be working but instead went to his father's property and stayed there for several hours. As it turns out, a deputy under Mr. Johnson's command failed to check on a school that was burglarized. But Mr. Johnson's abandonment of his post would have constituted egregious misconduct whether or not his deputies performed their jobs properly and whether or not a school was burglarized. The Sheriff was entitled to expect Mr. Johnson and everyone else on the public payroll to work their shifts. Going home—or to one's father's property—instead of staying on the job is a reason that might motivate a

reasonable employer to impose discipline. Mr. Johnson's obligation in response to the summary-judgment motion was to "meet that reason head on and rebut it." *Id.* This he has failed to do. He also has failed to present any evidence that race was a factor in his earlier transfer.

To be sure, Mr. Johnson says there are two comparators: employees of a different race who engaged in misconduct but were not disciplined as harshly. But a comparator is an employee who is similarly situated in all relevant respects, that is, in all respects that might legitimately lead a reasonable employer to treat the employees differently. The two individuals Mr. Johnson cites were not similarly situated in relevant respects.

Shelton Turner, a lieutenant, allowed a woman who was a convicted felon to ride in his patrol car and to go with him on a call. The Sheriff suspended Mr. Turner for that misconduct. A reasonable sheriff could decide abandoning one's post warranted greater discipline, lesser discipline, or the same discipline as the markedly different misconduct of allowing a felon to ride along. That different discipline was imposed for the markedly different misconduct does not suggest in any way that race was a factor.

Ulysses Jenkins, a nonsupervisory investigator, falsified his time sheets, working a different job while on the clock at the Sheriff's Department. He resigned before he was disciplined. Demotion would not have been an option in any event;

Mr. Jenkins held the lowest relevant position and thus could not be demoted. That a nonsupervisory employee who resigned and could not have been demoted anyway was not in fact demoted—and thus did not receive the same discipline as Mr. Johnson—does not suggest that race was a factor in Mr. Johnson's demotion.

In sum, the record establishes beyond genuine factual dispute that Mr. Johnson was demoted for reasons unrelated to race. The Sheriff is entitled to summary judgment on the state-law demotion claim and would be entitled to summary judgment on the other claims were they not subject to dismissal for failure to exhaust administrative remedies.

V

For these reasons,

IT IS ORDERED:

1. The defendant's summary-judgment motion, ECF No. 18, is deemed a motion to dismiss for failure to exhaust administrative remedies and a motion for summary judgment. The motion is granted.

2. The clerk must enter judgment stating, "This action was resolved on a motion to dismiss and for summary judgment. It is ordered that the plaintiff Gilbert Johnson recover nothing on his claims against the defendant Morris Young, in his official capacity as Sheriff of Gadsden County, Florida. The claim arising under

Florida law based on Mr. Johnson's demotion is dismissed on the merits. The other claims are dismissed with prejudice for failure to exhaust administrative remedies."

    3.  The clerk must close the file.

    SO ORDERED on August 30, 2016.

                                         <u>s/Robert L. Hinkle</u>
                                         United States District Judge